977 So.2d 49 (2007)
Annie Lois BERNARD
v.
PETRO STOPPING CENTERS and Liberty Mutual Insurance Company.
Petro Stopping Centers and Liberty Mutual Insurance Company
v.
Annie Bernard.
Nos. 2007 CA 0387, 2007 CA 0388.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Rehearing Denied December 12, 2007.
Clarence T. Nails, Jr., Baton Rouge, LA, for Plaintiff-Appellant, Annie Lois Bernard.
*51 Philip J. Borne, New Orleans, LA, for Defendants-Appellees, Petro Stopping Centers and Liberty Mutual Ins. Co.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
In this workers' compensation case, Annie Lois Bernard appeals a judgment rendered by the Office of Workers' Compensation ("OWC") dismissing her claim for workers' compensation benefits, attorney fees, costs, and interest. The employer, Petro Stopping Centers ("Petro"), answered the appeal and requested additional relief by asserting that the OWC erred in failing to find that Ms. Bernard violated La. R.S. 23:1208 by willfully making false statements in an attempt to obtain benefits and in failing to award it restitution pursuant to the statute. For the following reasons, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Ms. Bernard alleges that she injured her lower back while lifting a bucket of dirty water during the course and scope of her employment as a custodian with Petro. There were no witnesses to this accident. On June 3, 2005, Ms. Bernard filed a Disputed Claim for Compensation and alleged that this accident occurred on February 7, 2005. In the Claim Data portion of the Disputed Claim for Compensation, Ms. Bernard alleges that the accident occurred on February 19, 2005. However, Ms. Bernard has communicated at least three other dates (February 2, 2005, February 26, 2005, and March 5, 2005) as being the date of the accident. On July 26, 2005, Petro answered the claim and denied the occurrence of an accident. On February 10, 2006, Petro and its workers' compensation carrier, Liberty Mutual Insurance Company, filed a Disputed Claim for Compensation on the basis that Ms. Bernard violated the anti-fraud provision of the Louisiana Workers' Compensation Act, specifically La. R.S. 23:1208. The two Disputed Claims for Compensation were consolidated for trial.
Following a trial before the OWC, the OWC judge dismissed Ms. Bernard's claim with prejudice, noting that she failed to meet her burden of proving by a preponderance of the evidence that she sustained a work-related injury at Petro on any of the dates she alleged. The OWC judge further concluded that although Ms. Bernard failed to produce competent evidence of an accident or injury, any misrepresentation did not rise to the level of fraud contemplated by La. R.S. 23:1208.
Ms. Bernard appeals and makes the following assignments of error: (1) the OWC erred in finding that a misstatement of the date of injury was such a misrepresentation as to justify a denial of workers' compensation benefits; (2) the OWC erred by finding that claimant did not prove a job-related injury by a preponderance of the evidence; and (3) the OWC erred in finding that defendant did not act in bad faith in failing to pay workers' compensation benefits. Petro has cross-appealed alleging that the OWC erred in failing to find that Ms. Bernard violated La. R.S. 23:1208.

LAW AND ANALYSIS

Occurrence of a Work-Related Injury
The Workers' Compensation Act provides coverage to an employee for personal injury by an "accident" arising out of and in the course of employment. La. R.S. 23:1031. An accident is defined by La. R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly *52 producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."
For a claimant to be entitled to receive workers' compensation benefits, she must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. Jackson v. Savant Insurance Company, 96-1424, p. 3 (La.App. 1st Cir.5/9/97), 694 So.2d 1178, 1180. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Id.; see also Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La. 1992). In determining whether the worker has discharged her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, unless there are circumstances casting suspicion on the reliability of the testimony. Bruno, 593 So.2d at 361. The determinations by a workers' compensation judge as to whether the claimant's testimony is credible and whether the claimant has discharged her burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id. Moreover, the factual finding of a workers' compensation judge concerning whether a work-related accident occurred is entitled to great weight on appellate review. See Bruno, 593 So.2d at 364.
The OWC judge, in written reasons for judgment, made reference to several inconsistencies in Ms. Bernard's testimony. Ms. Bernard's trial testimony, deposition testimony, pretrial statement, and her Disputed Claim for Compensation offer varying accounts as to when she reported her alleged accident to Mary Arm Ratcliff (Petro's associate manager) and the circumstances of her reporting the alleged accident to Ms. Ratcliff.
Ms. Bernard stated in her Disputed Claim for Compensation that her accident occurred at 8:30 a.m. on February 19, 2005. Concerning the circumstances of reporting the accident, Ms. Bernard wrote:
I limped from the back very slowly and managed to finally make it to the office door in tears telling Mrs. Ratcliff what had just happen [sic] to me so just as she were [sic] asking me what happen [sic] the phone ring before she could finish talking to me[.] It was a call from someone telling her she had to leave right away[,] her son were [sic] in a head on accident and killed 3 people while going up a one way and she never gotten [sic] the chance to write a[sic] accident report.
At her September 8, 2005 deposition, Ms. Bernard testified that her accident occurred on March 5, 2005, stating: "I could never forget that." Moreover, Ms. Bernard was certain that Ms. Ratcliff was her supervisor that day. Ms. Bernard testified that she was present at the time Ms. Ratcliff received the phone call from someone that her son had been in a bad accident.
At trial, Ms. Bernard testified that she could not remember the date of her accident, stating: "February, March, something like that. February." On cross-examination, she testified: "Around March." However, that it was a Saturday she was certain, because it was the Saturday before her employment was terminated. Ms. Bernard was terminated on March 7, 2005, and she eventually testified that the alleged accident occurred on *53 March 5, 2005.[1] Ms. Bernard was reluctant to state a time that her accident occurred. However, when pressed, she testified that it occurred sometime before noon and the phone call that Ms. Ratcliff received concerning her son occurred around 10:00 a.m. Ms. Bernard testified that when she went to report the accident to Ms. Ratcliff she was on the telephone and "[h]er son was in the hospital or someone was calling her letting her know about her son. And she had to leave from there immediately to make it there to go and check on her son."
Ms. Ratcliff was called as a witness and testified that on February 19, 2005, after 11:00 p.m., she received a call at home informing her that her son was involved in a horrific accident in which three people were killed. Ms. Ratcliff testified that her son was rushed to Charity Hospital in New Orleans, and he remained in a trauma unit there for several months following the accident. Significantly, Ms. Ratcliff testified that she was not at work on March 5, 2005, because she was at her son's side in the intensive care unit. Moreover, Ms. Ratcliff testified that had Ms. Bernard or any other employee told her that they were injured on the job, she would have prepared an accident report. The OWC judge, seemingly impressed with Ms. Ratcliff's impartiality, pointed out in her reasons for judgment that Ms. Bernard was previously terminated from employment at Petro for "no-shows." Ms. Ratcliff was the person who re-hired Ms. Bernard after her previous termination. In addition, Ms. Ratcliff testified that Ms. Bernard was a good worker.
Documentary evidence submitted at trial reveals that Ms. Bernard worked February 19, 2005, from 7:58 a.m. to 4:15 p.m. Therefore, if the accident occurred at 8:30 a.m. as she reported in her Disputed Claim for Compensation, then she sat around the rest of the day (as she testified that she was unable to work after the accident) and clocked out at the end of her shift. It was further established that Ms. Ratcliffs son's serious automobile accident occurred February 19, 2005, at approximately 11:00 p.m., as evidenced by the Uniform Motor Vehicle Traffic Crash Report prepared by the Louisiana State Police and newspaper articles appearing in Hammond's Daily Star recounting the accident. Moreover, if the accident had occurred on February 19, 2005, then Ms. Bernard continued to work two weeks thereafter without complaint.
Citing Henderson v. Core Construction Company, 295 So.2d 874, 876 (La.App. 1st Cir.), application denied, 299 So.2d 792 (La.1974), Ms. Bernard argues that confusion about the time or date that a work-related accident occurs does not result in an automatic denial of workers' compensation benefits. In and of itself, confusion about or vacillation concerning the date of an accident may not be fatal to a claimant's case; however, under the facts of this case, the OWC judge found that the varying accounts rendered by Ms. Bernard were pivotal to her credibility.
We find Ms. Bernard's inconsistent versions regarding the date of the alleged accident and her inconsistent statements concerning her reporting of the alleged incident by themselves support the trial court's finding that Ms. Bernard failed to *54 carry her burden of proof by a preponderance of the evidence to establish that a work-related accident occurred. There was no report of injury prepared by Ms. Ratcliff. Ms. Ratcliff's testimony and the documentary evidence demonstrate that she was not working on March 5, 2005. Moreover, she did not receive a call regarding her son while at work on February 19, 2005, because his accident did not occur until 11:00 p.m. that night.
The OWC judge also found that Ms. Bernard's credibility was called into question when she denied being previously terminated by Petro for absenteeism and denied filing for unemployment benefits after the termination. Ms. Ratcliff s testimony and the unemployment records directly contradict Ms. Bernard's testimony.
In attempted corroboration of her claim, Ms. Bernard did see Dr. Marvin Clifton for her purported work-related injury, and she introduced medical records that support objective findings of lower back pain. However, Ms. Bernard did not see Dr. Clifton until March 17, 2005, and she reported to him that she was injured on February 26, 2005.
Additionally, Ms. Bernard called her daughter-in-law, Tanya Turner, as a witness. Ms. Turner had no personal knowledge of Ms. Bernard's accident other than it occurred on a Saturday night in March. Ms. Turner testified that she and her husband, Ms. Bernard's son, received a call on a Saturday night, after 9:00 p.m., to come pick up Ms. Bernard from work. This version of events does not corroborate Ms. Bernard's version. Ms. Turner did support Ms. Bernard's testimony that she gained some 50 pounds following the alleged accident; however, that testimony was contradicted by medical records that demonstrated Ms. Bernard's history of fluctuating weight.
As previously indicated, the determination by the OWC judge as to whether Ms. Bernard's testimony is credible and whether she has discharged her burden of proof are factual determinations that will not be disturbed on review absent manifest error. In this case, the OWC judge found Ms. Bernard not to be a credible witness. As a result, the OWC judge determined that no work-related accident was proven to have occurred to cause injury to Ms. Bernard. Based upon a thorough review of the record, we cannot say that the OWC judge was clearly wrong in finding that Ms. Bernard did not prove by a preponderance of the evidence that she was injured in a work-related accident during the course and scope of her employment.

Civil Penalties for Willful False Statements or Representations
Petro contends that the OWC judge erred in failing to find that Ms. Bernard willfully made false statements and representations for the purpose of obtaining benefits in violation of La. R.S. 23:1208. The burden of proof under La. R.S. 23:1208 requires more than a mere showing of inconsistent statements or inadvertent admissions by the claimant. Sevin v. Greenbriar Nursing Home, 2000-2794, p. 4 (La.App. 1st Cir.2/15/02), 807 So.2d 1179, 1181. The issue of whether an employee forfeited (by willfully making false statements) her workers' compensation benefits is also one of fact, which should not be reversed on appeal, absent manifest error. Hull v. Fluker Farms, XXXX-XXXX, p. 6 (La.App. 1st Cir.5/11/01), 787 So.2d 535, 539, writ denied, 2001-2291 (La.11/16/01), 802 So.2d 612.
We find no manifest error in the OWC judge's determination that Ms. Bernard's inconsistent statements regarding the date and circumstances surrounding her alleged accident did not rise to the type of willful, false representations that *55 constitute fraud. We agree with the OWC judge that Ms. Bernard's credibility was problematic and that she did not carry her burden of proof to establish a work-related accident. However, Petro failed to demonstrate that Ms. Bernard knowingly gave untruthful answers or made false statements for purposes of obtaining benefits. Based on this record, we cannot say that the OWC judge erred in her factual findings that were based heavily on credibility determinations.

CONCLUSION
The judgment of the Office of Workers' Compensation judge is affirmed in all respects. The costs of this appeal are assessed equally to the claimant, Annie Lois Bernard, and to the employer, Petro Stopping Centers.
AFFIRMED.
NOTES
[1] Ms. Bernard was terminated from Petro on March 7, 2005, for failure to show up for work and for failure to call and advise that she would not be into work on February 20, 2005, and March 6, 2005. Ms. Bernard would testify that she did not appear for work on March 6, 2005, because of the injury she allegedly sustained on March 5, 2005. However, she testified that she informed a co-worker, Stephen, that she would not be able to make it, and Stephen told her that he would take care of it.