991 So.2d 469 (2008)
Sidney B. STEWART
v.
LIVINGSTON PARISH SCHOOL BOARD.
No. 2007 CA 1881.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
*471 Max LaBranche, Baton Rouge, LA, for Plaintiff-Appellee, Sidney B. Stewart.
Carey T. Jones, Denham Springs, LA, for Defendant-Appellant, Livingston Parish School Board.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
CARTER, C.J.
This appeal is taken from a judgment of the Office of Workers' Compensation District 5 for the State of Louisiana in favor of plaintiff, Sidney B. Stewart, and against defendant, the Livingston Parish School Board. For the following reasons, we affirm as amended and remand.

FACTS AND PROCEDURAL BACKGROUND
Sidney B. Stewart was employed as a full-time English teacher at Denham Springs High School (DSHS) for thirteen years. On Wednesday, August 11, 2004, during the first week of school, Mr. Stewart injured his left ankle when he stepped into a low spot or rut alongside a sidewalk on the DSHS school grounds while escorting students to the gymnasium for yearbook pictures. Mr. Stewart had a preexisting condition in his left ankle requiring three prior surgeries, most recently in April 2004, from which he was recuperating at the time. Mr. Stewart reported his injury, which was witnessed by several students, to the principal of DSHS, but he continued to work until Friday, August 13, 2004, when he saw his treating orthopedic surgeon, Dr. William F. Hageman, for a previously-scheduled appointment.
*472 At the August 13th office visit, Dr. Hageman noted a definite change in the condition of Mr. Stewart's ankle from the last time he had seen Mr. Stewart on June 28, 2004. At the June visit, Dr. Hageman noted that Mr. Stewart had less pain and was feeling better after his April surgery. In contrast, at the August 13th office visit, Dr. Hageman noted that Mr. Stewart had considerable swelling and significant pain. Dr. Hageman had discussed future surgical options with Mr. Stewart before the August 11th injury, but to that date, Mr. Stewart had not been willing to endure more surgery on his ankle. Before the August 11th injury, Mr. Stewart was satisfied with the condition of his ankle, was working full-time, and was walking without the aid of crutches or a cane. At the August 13th office visit, however, Dr. Hageman recommended and Mr. Stewart agreed to undergo a left ankle fusion surgery to relieve his intolerable pain and instability in the ankle. The surgery was scheduled for September 2, 2004. Mr. Stewart made a claim with his private health insurer, Blue Cross Blue Shield of Louisiana (Blue Cross), for payment of his treatment and surgery, because at the time, he was unaware that he could make a workers' compensation claim through his employer, the Livingston Parish School Board (the School Board). Blue Cross made payments totaling $12,114.40 for medical expenses associated with Mr. Stewart's September 2004 fusion surgery.
Initially, the surgery appeared to be successful, but after a few months, it became apparent that the fusion had failed. Mr. Stewart returned to full-time work on March 21, 2005, because he had exhausted all of his extended sick leave, but he was working in significant pain and was walking with the assistance of a cane. As soon as the 2005 school year ended, Dr. Hageman recommended and Mr. Stewart agreed to undergo a second fusion surgery on May 31, 2005. Mr. Stewart returned to work when school began again in August 2005.
Sometime after Mr. Stewart's first fusion surgery in September 2004, he learned through a Blue Cross questionnaire that he could make a workers' compensation claim for his injury since it had occurred during the course and scope of his employment at DSHS. Mr. Stewart submitted his claim for payment of his medical expenses, out-of-pocket expenses, and time off from work that he believed was all related to the August 11, 2004 accident and injury. He sent a letter dated March 31, 2005, to Hospital Services of Louisiana, Inc. (HSLI), the third-party administrator for the School Board's workers' compensation claims, requesting that HSLI review his claim and advise him as to how his claim would be handled.
Mr. Stewart did not receive a response to his letter, so he filed a disputed claim for compensation in the Office of Workers' Compensation (OWC) on July 12, 2005, shortly after his second fusion surgery. The School Board filed an answer to the disputed claim on December 27, 2005. Meanwhile, a claims consultant for HSLI, Stan Strasner, had begun to review and investigate Mr. Stewart's claim in August 2005. Eventually, on February 22, 2006, HSLI issued a check in the amount of $12,114.40 to Mr. Stewart, his attorney, and Blue Cross for reimbursement of the medical expenses paid by Blue Cross for the first fusion surgery. HSLI issued a second check on the same date to Mr. Stewart and his attorney in the amount of $8,580.00, representing five months of temporary total disability payments (at the maximum rate of $429.00 per week), based on Dr. Hageman's estimate that Mr. Stewart's recovery time after the first surgery would have been between four and six months. HSLI denied medical expenses *473 and benefits related to the second fusion surgery, because HSLI determined that Mr. Stewart's claim relating to the second surgery was not compensable due to causation issues and Mr. Stewart's pre-existing ankle condition. At no time, however, did HSLI dispute that Mr. Stewart was injured on August 11, 2004, during the course and scope of his employment at DSHS.
Following a trial on the merits on June 14, 2006, the OWC judge found Mr. Stewart credible and accordingly concluded that Mr. Stewart had been injured in a work-related accident on August 11, 2004. Therefore, the OWC judge granted judgment in favor of Mr. Stewart and against the School Board, awarding Mr. Stewart "workers' compensation benefits and all medical expenses incurred as a result of his 8/11/04 injury at [DSHS]." The School Board was also ordered to "recognize and pay [Blue Cross's] subrogation herein for any medical expenses paid by [Blue Cross] on [Mr. Stewart's] behalf for medical care received by [Mr. Stewart] subsequent to [his] injury of 8/11/04." Additionally, the judgment provided that Mr. Stewart be awarded "temporary total disability benefits at the rate of [$429.00] per week for the period of 8/16/04 through 3/21/05, subject to a credit for any temporary total disability benefits paid by [the School Board] to [Mr. Stewart] for that period, to date." Finally, the judgment ordered that Mr. Stewart be awarded: (1) $1,502.00 for reimbursement of his out-of-pocket and co-pay expenses incurred since 8/11/04; (2) $2,000.00 for penalties for the School Board's arbitrary and capricious failure to timely pay his medical expenses; (3) $2,000.00 for penalties for the School Board's arbitrary and capricious failure to timely pay his temporary total disability benefits; and (4) $7,500.00 for attorney's fees. The School Board was also ordered to pay legal interest and costs. The School Board moved for a new trial, which was denied, and then timely appealed the OWC judgment on the merits, raising seven assignments of error.[1]

DISCUSSION AND LAW

Standard of Review
It is now well established that the standard of appellate factual review in workers' compensation cases is the same as for other civil cases, i.e. whether the findings made by the trier of fact are manifestly erroneous or clearly wrong. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737; Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issues of whether a claimant has carried his burden of proof as to the occurrence of a work-related accident that caused an injury entitling him to workers' compensation benefits, whether testimony is credible, and whether the refusal to pay benefits and medical expenses warrants the imposition of penalties and attorney's fees are all questions of fact that are governed by the manifest error standard. Roberts v. Thibodaux Healthcare Center, 05-0774 (La.App. 1 Cir. 3/24/06), 934 So.2d 84, 91. Under the manifest error rule, an appellate court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Id.

*474 Statutory Limitation on Medical Expenses

The School Board argues in its first assignment of error that the OWC judge erred in failing to apply the statutory cap on medical expenses in accordance with LSA-R.S. 23:1142 B. Initially, we are compelled to point out that the School Board failed to raise the issue of the statutory limitation on medical expenses until its motion for new trial was filed. The OWC specifically stated that it would not consider the issue when it denied the motion for new trial. The School Board did not assign as error that the motion for new trial was improperly denied by the OWC judge. As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994); Jackson v. Home Depot, Inc., 04-1653 (La.App. 1 Cir. 6/10/05), 906 So.2d 721, 725; Rowley v. Eye Surgery Center of Louisiana, Inc., 06-1243 (La.App. 4 Cir. 4/4/07), 956 So.2d 680, 684 n. 8, writ denied, 07-0965 (La.6/22/07), 959 So.2d 509.
Uniform Rules  Courts of Appeal, Rule 1-3, provides: "[t]he Courts of Appeal will review only issues which were submitted to the trial court . . . unless the interest of justice clearly requires otherwise." Because we find that the statutory limitation on medical expenses in workers' compensation cases is not an affirmative defense that must be specifically pleaded or necessarily raised during trial, we take judicial notice of the statutory cap provided in LSA-R.S. 23:1142 B, and will consider the School Board's assignment of error even though the School Board failed to rely on the cap as a limitation of its liability at trial. See LSA-C.C.P. art. 1005; Salter v. State, through Dept. of Health and Human Resources, 612 So.2d 163, 166 (La.App. 1 Cir.1992). Cf. White v. Fresenius Medical Care, 01-1023 (La.App. 3 Cir. 12/12/01), 801 So.2d 1239, 1247, writ denied, 02-0138 (La.3/28/02), 811 So.2d 945.
In a workers' compensation case, the employer has a duty to furnish all necessary medical and non-medical services. LSA-R.S. 23:1203 A. Louisiana Revised Statute 23:1142 provides for reimbursement of medical expenses in workers' compensation cases, and provides in pertinent part:
A. Definitions. ... (1) "Payor" shall mean the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
* * *
C. Emergency care. (1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider.

*475 * * *
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provisions of any diagnostic testing or treatment for that injury.
(Emphasis added.)
The School Board contends that because it did not deny the compensability of Mr. Stewart's claim until it filed its answer on December 27, 2005, it is not responsible for any of the non-emergency medical expenses in excess of $750 per health care provider that were incurred prior to that date since it never consented to the treatment. The School Board concedes that the only medical expenses at issue are those associated with the second fusion surgery that occurred on May 31, 2005  approximately seven months before the School Board's answer was filed.[2]
The record reveals that the School Board, through its workers' compensation claims administrator, HSLI, effectively denied Mr. Stewart's claim for medical expenses when it failed to respond to Mr. Stewart's March 31, 2005 letter requesting that his claim be reviewed. We find that the lack of a response was the equivalent of a denial of compensability such that the exception in LSA-R.S. 23:1142 E applied. See Barron v. First Lake Properties, Inc., 93-902 (La.App. 5 Cir. 3/29/94), 636 So.2d 970, 973. When compensability is denied, no approval is required for testing or treatment.[3] The statute does not specify "when" or "how" a denial of compensability must occur; it merely states that if the payor denies that an injury is compensable, the employee need not seek approval for medical treatment. Thus, the exception in subsection E applies regardless of when a denial of compensability occurs. Herrell v. Tempo Personnel, 633 So.2d 690, 693 (La.App. 1 Cir.1993), writ denied, 635 So.2d 1101 (La.1994).
To interpret LSA-R.S. 23:1142 E as the School Board claims, would result in a loophole for workers' compensation insurers to deny payment of medical expenses during an "investigatory" period. Barron, 636 So.2d at 973. A brief investigatory period may be justified, but should not prevent or delay emergency treatment or treatment deemed necessary and which cannot be postponed. Id.
By its answer to Mr. Stewart's disputed claim form, the School Board expressly denied the claim after Mr. Stewart's medical expenses for his first and second fusion surgeries were incurred. This is not the typical fashion that workers' compensation claims are made, but Mr. Stewart did not immediately realize that he could make a workers' compensation claim for his work-related accident. As such, the School Board, through HSLI, did not have an opportunity to approve or disapprove of any treatment until Mr. Stewart presented HSLI with his March 31, 2005 letter requesting review of his claim. At that point, HSLI was in a position to deny or approve the claimed expenses. HSLI has always denied, by its unresponsiveness to *476 Mr. Stewart's letter and slow investigation process, and still denies that Mr. Stewart's August 11, 2004 injury caused the necessity of the second fusion surgery. Because the unrebutted testimony of Dr. Hageman and Mr. Stewart supports the OWC's conclusion that the second fusion surgery was medically necessary due to the failed first fusion, and Mr. Stewart's claim was in fact denied during HSLI's investigatory period, and at all times thereafter, no prior approval of the medical treatment related to Mr. Stewart's second fusion surgery was necessary.[4] Therefore, we find no merit to the School Board's first assignment of error.

Causation
In its second assignment of error, the School Board argues that the OWC judge erred in concluding that Mr. Stewart's August 11, 2004 injury resulted in medical treatment beyond the initial fusion surgery and recovery period. The School Board urges that the accident was not a causal factor in the failure of the initial fusion surgery, but rather, it was Mr. Stewart's serious pre-existing condition that caused the first fusion to fail. Mr. Stewart counters that Dr. Hageman's testimony was unrefuted, clearly linking the necessity of the first fusion surgery to the August 11, 2004 accident, as well as the failure of the first fusion that resulted in the need for the second fusion surgery.
Having reviewed the entire record, we do not find the OWC judge committed manifest error in finding Mr. Stewart proved that both of his fusion surgeries were causally related to the August 11, 2004 work-related injury. Dr. Hageman and Mr. Stewart provided clear testimony that the condition of Mr. Stewart's left ankle changed after the August 11th accident, such that there was a "definite . . . relationship" between the accident and the need for the fusion surgery. Dr. Hageman testified that there was no particular reason why the first fusion surgery failed, but because his ankle failed to heal properly, Mr. Stewart needed to have the second fusion surgery. The School Board simply failed to present any rebuttal testimony, and merely relied on its assertion that Mr. Stewart would have needed the fusion surgery in the future whether he had the work-related accident or not.
An employee in a workers' compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324 (La.1985). Where an employee suffers from a pre-existing medical condition, as in the case sub judice, he may nevertheless prevail if he proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce . . . disability for which compensation is claimed." Id. While Mr. Stewart clearly had ankle problems prior to his work-related accident, the record supports the OWC judge's finding that Mr. Stewart was working when he suffered the injury that aggravated his pre-existing condition to the point that both fusion surgeries were necessary. The School Board did not present any evidence to rebut Dr. Hageman's testimony concerning causation or Mr. Stewart's credibility. In the absence of such contradictory evidence, we cannot say the OWC judge committed manifest error in finding that *477 Mr. Stewart met his burden of proving his case by clear and convincing evidence. See McGaughey v. City of New Orleans, 96-1331 (La.App. 4 Cir. 5/28/97), 695 So.2d 1109, 1115. This assignment of error lacks merit.

Medical Expenses
In its third, fourth, and fifth assignments of error, the School Board contends the OWC judge erred in awarding medical expenses without itemization or medical bills presented at trial, without evidence attributing the expenses to the August 11, 2004 accident, and in making duplicative awards without differentiation as to whom the payment was due. We have carefully examined the medical expense evidence submitted at trial, the language of the judgment, and the oral reasons given by the OWC judge. We disagree with the School Board's assertion that the record lacks evidence of the medical bills and itemization of expenses paid by Mr. Stewart and his health insurer, Blue Cross. However, the judgment does not specify a dollar amount that the School Board is to pay Mr. Stewart for the medical expenses. The record reflects that the parties stipulated that the itemization of medical expenses was correct, but there was no stipulation as to causation or whether the expenses were necessary. As noted earlier, the evidence was unrefuted that the two fusion surgeries were medically necessary and related to the August 11, 2004 accident.
In oral reasons on the day of the trial, the OWC judge stated that the School Board was to "pay all medical expenses" and the Blue Cross subrogation "lien shall be satisfied by [the School Board] for any medical expenses paid by Blue Cross relating to the ankle injury from August 11, 2004 to the present. . . . [A]nything prior to the date of the accident [are denied], but all expenses thereafter in relation to the left ankle injury shall be satisfied." Unfortunately, the judgment signed by the OWC judge mirrors the general comments of the oral reasons without giving a specific dollar amount for the medical expenses owed for Blue Cross's subrogation lien. The itemizations and computer printouts from health care providers that were submitted in evidence included expenses that occurred before the August 11, 2004 accident. Therefore, we find it necessary to remand this case for a full hearing to determine the exact dollar amount of medical expenses incurred after the August 11, 2004 accident that are owed by the School Board to Mr. Stewart, and after that hearing, the OWC judge is to render a new judgment reflecting the specific dollar amount that the School Board must pay to Mr. Stewart for the medical expenses connected to his work-related ankle injury he sustained on August 11, 2004.[5]See Oxley v. Sattler, 97-1299 (La. App. 3 Cir. 2/18/98), 710 So.2d 261, 266, writ denied, 98-1864 (La.4/23/99), 739 So.2d 183. As for the award of $1,502.00 for reimbursement of Mr. Stewart's out-of-pocket and co-pay expenses, we find that the record supports the award, and is thus, not in error.

Temporary Total Disability Benefits
In its sixth assignment of error, the School Board contends the OWC judge erred in awarding temporary total disability (TTD) benefits without any proof that *478 Mr. Stewart was disabled during the thirty-three week benefit period of August 16, 2004 through March 21, 2005. Again, we point out that the evidence was unrebutted, clear, and convincing that Mr. Stewart was off work and recovering from surgery for the time period that the OWC judge awarded benefits. Dr. Hageman testified that normally it would take four-to-six months to recover from a fusion surgery. But considering the fact that Mr. Stewart's first fusion surgery failed, we find that the slightly longer time frame of thirty-three weeks before Mr. Stewart returned to work was reasonable. The wage and employment records admitted into evidence show that Mr. Stewart was unable to work for the thirty-three week time period, and when he returned to work, he required accommodations because he was working in considerable pain due to the failed fusion. In view of the evidence on this point, we find the OWC judge's conclusion that Mr. Stewart was entitled to TTD benefits at the maximum weekly rate of $429.00 per week for thirty-three weeks was reasonably supported by the record. Therefore, this assignment of error has no merit.
We find, however, that because the judgment did not state the exact dollar amount owed by the School Board to Mr. Stewart for the TTD benefits, we must amend the judgment to reflect that the School Board is ordered to pay Mr. Stewart a balance of $5,577.00 for TTD benefits. This amount reflects an $8,580.00 credit for the amount that was previously paid by HSLI on behalf of the School Board for five months of TTD benefits at the maximum rate.

Penalties and Attorney's Fees
The School Board argues in its final assignment of error that the OWC judge erred in awarding Mr. Stewart penalties and attorney's fees because the School Board's conduct was not arbitrary and capricious, given Mr. Stewart's extensive history of a pre-existing condition. The School Board contends it was justified in questioning what surgeries, treatment, and disability were related to the August 11, 2004 accident. Mr. Stewart counters with the fact that the School Board's workers' compensation administrator, HSLI, did not investigate the claim until five months after Mr. Stewart sent a letter requesting that his claim be reviewed and almost two months after Mr. Stewart's second fusion surgery. Furthermore, the School Board's denial of compensability in its answer to Mr. Stewart's disputed claim did not occur until nine months after Mr. Stewart had requested benefits and review of his claim. Mr. Stewart contends that the School Board's failure to respond to his claim and to timely investigate the claim warrants the OWC judge's award of penalties and attorney's fees.
The OWC judge remarked in its oral reasons for judgment that it was struck by the School Board's "lack of response" to Mr. Stewart's request for benefits. The OWC judge also stated that the School Board (or its insurer) was obligated to make a "good faith investigation before denying a claim based upon an assumption. . . that [Mr. Stewart] ha[d] previous ankle injuries. . . . [The School Board] provided no proof to this court . . . to consider what the denial was based upon at the time. The court finds that the action, or the lack of action taken by [the School Board] was arbitrary and capricious and without probable cause to deny the claim. The court finds that penalties and attorney[']s fees are due." After thoroughly reviewing the record, we agree with the OWC judge's reasoning and reasonable findings as to this issue. See Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 24-25. The School Board clearly disregarded *479 its duty to properly and reasonably investigate the cause of Mr. Stewart's ankle condition. Therefore, we find no manifest error in the OWC judge's award of penalties and attorney's fees. This assignment of error is without merit.

CONCLUSION
We hereby amend the June 23, 2006 judgment of the OWC judge to reflect an exact dollar amount of $5,577.00 owed by the School Board to Mr. Stewart for the balance of his TTD benefits, and as amended, we affirm in all other respects. But we remand the case in part for further proceedings consistent with the law and views expressed herein concerning a full hearing and new judgment determining the exact dollar amount owed by the School Board for Mr. Stewart's medical expenses related to the August 11, 2004 work-related accident. All costs in the amount of $460.00 for this appeal are assessed to the School Board.
AMENDED IN PART; AFFIRMED IN PART; AND REMANDED IN PART.
NOTES
[1] Mr. Stewart answered the appeal, requesting additional attorney's fees. This court dismissed the answer to appeal as untimely in a separate action on January 24, 2008; and thus, the issue of additional attorney's fees incurred in this appeal cannot be considered. See LSA-C.C.P. art. 2133.
[2] The medical expenses related to the first fusion surgery on September 2, 2004, were ultimately paid by the School Board's workers' compensation claims administrator; thus, those expenses were not "unauthorized" according to LSA-R.S. 23:1142. See Gilmore v. SGB Const. Services, Inc., 97-1669 (La.App. 1 Cir. 5/15/98), 712 So.2d 663, 665-666. By paying the medical expenses related to the first fusion surgery, the School Board waived its argument regarding the statutory limitation as it relates to those expenses.
[3] As previously stated, reimbursement of all medical expenses are limited to those that are necessary. LSA-R.S. 23:1203 A.
[4] We note that Dr. Hageman's unrebutted testimony stating that the second fusion surgery was necessary because the first fusion failed and Mr. Stewart was in significant pain, arguably meets the "immediate" factor of LSA-R.S. 23:1142 C, dispensing with the need for prior approval. See Louviere v. Food & Fun, Inc., 06-469 (La.App. 3 Cir. 10/11/06), 941 So.2d 155, 161.
[5] The exact dollar amount awarded for medical expenses should reflect a credit of $12,114.40 that the record reveals was previously paid by HSLI on behalf of the School Board to Mr. Stewart, his attorney, and Blue Cross for the medical expenses associated with the first fusion surgery.