McClendon, j.
lain this workers’ compensation case, the defendants appeal a judgment, awarding the plaintiff temporary total disability benefits and medical expenses and assessing the defendants with penalties and attorney fees for their failure to pay medical benefits. For the reasons that follow, we reverse in part and affirm in part.
FACTUAL AND PROCEDURAL BACKGROUND
On January 5, 2007, the plaintiff, Rosalind M. Youngblood, filed a Disputed Claim for Compensation, asserting that on April 30, 2006, while performing rounds as a security guard for Covenant Security Services, LLC (Covenant), she slipped and fell in water on the floor of the hallway of the maintenance building at the Air Products plant in St. Gabriel, Louisiana. Ms. Youngblood alleged that as a-result of the accident she suffered injuries to her back and right knee. Also made a defendant was Covenant’s insurer, Ace American Insurance Company.[1]
Following a trial in this matter on February 14, 2011, the Office of Workers’ Compensation (OWC) kept the record open for the parties to file post-trial briefs, and on April 21, 2011, the OWC issued reasons for judgment. On May 3, 2011, the OWC signed a judgment, which provided that 1) Ms. Youngblood sustained an accident in the course and scope of her employment with Covenant on April 20, 2006[2]; 2) as a result of the accident, Ms. *236 Youngblood sustained injuries to her low back, neck and aggravation to her right knee; 3) Ms. Youngblood was released to full duty work effective May 6, 2006; 4) Ms. Youngblood was terminated for cause by Covenant on August 9, 2006[3]; 5) Ms. Youngblood was not entitled to indemnity benefits after her termination until the | atime of her lumbar spine fusion on December 10, 2009; 6) Covenant is to pay to Ms. Youngblood temporary total disability (TTD) benefits from December 10, 2009, through the date of the reading of the judgment on April 21, 2011, totaling $17,135.14 plus interest at 9.5%; 7) Covenant is to continue to pay Ms. Youngblood TTD benefits in the amount of $241.34 per week, beginning the week of April 25, 2011; 8) Covenant is responsible for all unpaid medical expenses associated with Ms. Youngblood’s work-related injuries; 9) Covenant reasonably controverted Ms. Youngblood’s entitlement to indemnity benefits; 10) Covenant did not reasonably controvert Ms. Youngblood’s entitlement to medical benefits, and therefore it owes Ms. Youngblood a $2,000.00 penalty and $5,000.00 attorney fee for same; and 11) Ms. Youngblood did not commit 1208 fraud.[4]
The defendants suspensively appealed said judgment, and assigned the following as error:
1.The [OWC] erred in finding the Claimant is entitled to temporary total disability benefits from December 10, 2009 and continuing.
2. The [OWC] erred in finding the Defendants responsible for the Claimant’s medical treatment costs and in assessing a penalty and attorney fee for failure to pay medical benefits.
3. The [OWC] erred in finding that the Claimant did not violate the provisions of LSA-R.S. 23:1208.
DISCUSSION
As a threshold requirement, a workers’ compensation claimant bears the initial burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Magee v. Abek, Inc., 04-2554 (LaApp. 1 Cir. 4/28/06), 934 So.2d 800, 806, writ denied, 06-1876 (La.10/27/06), 939 So.2d 1287. A worker’s testimony alone may be sufficient to discharge this burden of proof if no other evidence discredits or casts serious doubt upon the worker’s version of the incident and the worker’s |4testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends, and by medical evidence. Sevin v. Greenbriar Nursing Home, 00-2794 (La.App. 1 Cir. 2/15/02), 807 So.2d 1179, 1180.
Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 04-0600 (LaApp. 1 Cir. 3/24/05), 907 So.2d 86, 88. Factual findings in a workers’ *237 compensation case are subject to the manifest error-clearly wrong standard of review. McCray v. Delta Industries, Inc., 00-1694 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. Thus, if the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Bolton v. B E & K Const., 01-0486 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35.
In their appeal, the defendants initially contend that Ms. Youngblood is not entitled to TTD benefits, maintaining that she failed to meet her burden of proof. The defendants argue that Ms. Youngblood failed to meet her burden of proving that her disability and inability to work was the result of the work-related accident in April 2006.
An employee seeking temporary total disability benefits in accordance with LSA-R.S. 23:1221(1) must prove by clear and convincing evidence that she is unable to engage in any gainful occupation, whether or not the same type of |5work she was engaged in at the time of injury.[5] To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Magee, 934 at 807. In the absence of such evidence, the claimant’s demand for temporary total or permanent total disability benefits fails. Nitcher v. Northshore Regional Medical Center, 11-1761 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1007, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342. Ultimately, the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Id.
Further, a claimant’s subjective belief that she cannot work does not satisfy the statutory burden of proof. Au-coin v. CNA, 12-0144, p. 4 (La.App. 1 Cir. 9/21/12), 111 So.3d 31. The issue of dis *238 ability is a legal rather than a purely medical determination, with reference to the totality of the evidence, including both lay and medical testimony. In order for a claimant to establish that she is disabled such that she is unable to engage in any employment, she must introduce objective medical evidence supporting the existence of a disabling condition. While the workers’ compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant’s burden. Id; Bonvillain v. Preferred Industries and LWCC, 04-0849 (La.App. 1 Cir. 5/27/05), 917 So.2d 1, 8.
At trial, Ms. Youngblood testified that the morning of the accident was particularly busy. She was performing her normal routine as a security guard, and, because the Air Products plant was being sold, a large cleaning crew was at the plant. Ms. Youngblood testified that she was going around unlocking doors for the cleaning crew, and when, she was unlocking the doors in the hallway of the last building, which was the maintenance building, she “slipped in a puddle of water and fell.” Ms. Youngblood stated that she called the supervisor and reported her accident. She also testified that she was not sent to a doctor by Covenant, and she went to her primary care physician, Dr. Raja Talluri, the following day, complaining of pain in her back and knee.[6]
The record shows that Ms. Youngblood was released to work for regular duty on May 5, 2006, by Dr. Talluri. Also on May 5. 2006, Ms. Youngblood was sent to Our Lady of the Lake Ascension Occupational Health Clinic to get a clearance to return to work.[7] She was released to “[rjeturn to regular work,” and the injury status report also indicated that Ms. Youngblood’s treatment was complete and no follow-up was necessary. The report was signed by Ms. Youngblood. Thereafter, Ms. Youngblood returned to her position as a security guard and continued to work until she was terminated on August 9, 2006.
Ms. Youngblood testified that when she returned to work after the accident, she was still in pain, but that she had to work to care for her family. Ms. Youngblood testified that she told her employer that she was still in pain and that she wanted to go back to the doctor. She stated that Covenant did not offer her any treatment or send her to a doctor. Ms. Youngblood stated that she continued to work, but when she asked for forms to fill out regarding a workers’ 17compensation claim to seek further treatment, Covenant did not respond, and she was terminated.
Ms. Youngblood testified that her surgeon, Dr. Cuong J. Bui, informed her that her back problems and need for surgery resulted from her slip and fall while working for Covenant. She stated that she had no prior back problems,[8] and that from the time of her accident until her termination, she performed her job duties, although she was always in pain. Ms. Youngblood also testified that since her back fusion surgery on December 10, 2009, she has not returned to work, is still in pain, and is being treated for her back. She also testified that according to her doctor she is fully disabled.
Besides her testimony, Ms. Youngblood also introduced medical records showing *239 that she was seen at Metairie Orthopaedic Clinic on March 14, 2007, by Dr. R. Vaclav Hamsa. Dr. Hamsa reported degenerative changes, as well as spondylolisthesis and disc ruptures at L5-S1 and L3-L4. Dr. Hamsa referred Ms. Youngblood to Dr. Fred DeFraneesch, who performed two facet injections on May 8, 2007. Ms. Youngblood was also treated at Tulane University Hospital and Clinic in 2008 and 2009 by Dr. Jacques S. Whitecloud for her back pain, where she received steroid injection therapy.
In her personal history information given to Ochsner Clinic Foundation on July 7, 2009, Ms. Youngblood indicated that her back trouble began in 2006 and noted:
I [am] coming here today about my back, and a CT of the brain. I need to know what will be done about the pain, and what is found on the brain. The lower [back] pain has made my life hell, the brain finding just turned up.[9]
Ms. Youngblood was examined by Dr. Bui on that date. He ordered an updated MRI of her lower back and flexion-extension x-rays to evaluate her back. Dr. Bui saw Ms. Youngblood for a follow-up on August 25, 2009, at which time he noted |sthat she had “pretty severe degenerative disc disease at L3^1 and L5-S1 with disc herniation at L3-4 and possible pars defect at L3^4.” He also reported that “L5-S1 has a grade 1 spondylolisthesis again with some central as well as bilateral foraminal stenosis at that level with evidence of bilateral facet arthropathy at both of these levels.” When Dr. Bui again saw Ms. Youngblood on October 20, 2009, he reported:
Reviewing the CAT scan today, it does confirm that she does have a bilateral pars defect at L3-L4 as well as L5-S1 with mild anterior listhesis of L5-S1 and vacuum disc at L5-S1. She has not had any prior surgery, but did suffer a significant fall several years ago, which she feels may be responsible for this.
Dr. Bui recommended a fusion at the L3-4 and L5-S1 levels, with the possibility of incorporating L4-L5 into the fusion. Dr. Bui noted that Ms. Youngblood wished to proceed with surgical intervention for pain relief.
While there is very little in the record regarding Ms. Youngblood’s lumbar spine fusion surgery, she introduced into evidence x-ray pictures of her spine, with the hardware in place.
The OWC concluded that Ms. Young-blood sustained an accident in the course and scope of her employment and that her back condition was related to the accident and was compensable. The OWC determined that because Ms. Youngblood was released to full duty, no indemnity benefits were due after her termination. However, the OWC also determined that once she had her back surgery, benefits became due. The OWC found that, while Ms. Youngblood was able to perform her job up to the date that she was terminated, her back began to deteriorate in 2008, resulting in her back fusion on December 10, 2009. Further, while recognizing that there was no evidence from any physician that Ms. Youngblood could not work, the OWC concluded that Ms. Youngblood was entitled to TTD benefits “at least for a period of recovery.” The OWC stated that there was “nothing after the surgery regarding her back” in the record to indicate whether Ms. Youngblood was able to return to a light-duty job, but added that “the Court thinks it’s a very reasonable inference when you have back fusion surgery that you cannot work.” The OWC then awarded TTD benefits from *240 1 ^December 10, 2009, “until we can find out from a physician whether she can go back to doing her job.”
Considering the above, including the clear and unrebutted testimony of Ms. Youngblood, we find that the record supports the OWC’s finding that Ms. Young-blood suffered a work-related injury that necessitated her lumbar back fusion. The defendants introduced no evidence to question whether Ms. Youngblood’s condition was related to her fall at work, other than the releases authorizing Ms. Youngblood to return to work. No witnesses testified and no medical evidence was presented by the defendants to contradict either Ms. Youngblood’s testimony or Dr. Bui’s assessment that Ms. Youngblood’s lower back problem was connected to her work-related injury.[10]
However, after a review of the record, we also conclude that Ms. Young-blood failed to prove by clear and convincing evidence that she was incapable of performing some type of work after her surgery entitling her to TTD benefits. Although Ms. Youngblood testified that she was unable to return to work and that she was still in pain and being treated for her back, there is simply no medical evidence in the record regarding her ability to return to work subsequent to her back surgery. Ms. Youngblood’s subjective belief that she could not return to work did not satisfy her statutory burden of proof, and she was required to introduce objective medical evidence supporting the existence of a disabling condition post-surgery. See Aucoin, 12-0144 at p. 4, 111 So.3d 31; Bonvillain, 917 So.2d at 8.
In the case of Buxton v. Iowa Police Department, 09-0520 (La.10/20/09), 23 So.3d 275, 288-89, the OWC awarded TTD benefits to the claimant following a work-related accident in which his police unit was struck by a motorcycle. The supreme court found that the decision of the OWC to award TTD benefits was based on one statement by the examining physician almost four months after the accident that the claimant needed “time to recover.” The 110court stated, “Clearly, this was not clear and convincing evidence of total disability,” and found the award of TTD benefits to have been manifestly erroneous. Buxton, 23 So.3d at 289-90. In this matter, it was the OWC that determined that Ms. Youngblood could not work following back fusion surgery and was entitled to TTD benefits “at least for a period of recovery.” Similarly, we cannot say that this inference was clear and convincing evidence of disability. We note that the legislature has effectively eliminated all but the most disabled employees from receiving TTD benefits, by requiring that the employee clearly and convincingly show that he is physically unable to engage in any employment. See LSA-R.S. 23:1221(1)(c); Aucoin, 12-0144 at p. 4, 111 So.3d 31. The record is simply devoid of any medical evidence addressing Ms. Youngblood’s disability following surgery. Accordingly, we conclude that the OWC committed manifest error in finding that Ms. Youngblood carried her burden of proof to entitle her to TTD benefits, and we reverse that portion of the judgment ordering Covenant to pay Ms. Youngblood past and future TTD benefits.
The defendants next contend that the OWC erred in finding them responsible for Ms. Youngblood’s medical expenses and in assessing a penalty and attorney fee for the failure to pay the medical benefits. The defendants argue that they were reasonable in not paying Ms. Youngblood medical *241 benefits since she had been released to return to full-duty work without restrictions and with no recommendation for further treatment. Additionally, defendants assert that Ms. Youngblood failed to request prior approval for treatment after May 5, 2006, and provide them with documentation regarding her treatment after that date.
In a workers’ compensation case, the employer has a duty to furnish all necessary medical and non-medical services. LSA-R.S. 23:1203 A. Louisiana Revised Statutes 23:1142 provides for reimbursement of medical expenses in workers’ compensation cases, and provides in pertinent part:
A. Definitions. ... (1) “Payor” shall mean the entity responsible, whether by law or contract, for the payment of the Inmedical expenses incurred by a claimant as a result of a work related injury.
[[Image here]]
E. Exception. In the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
In this matter, the record shows that although Ms. Youngblood was released to return to work shortly after the accident, she testified that she continued to suffer from pain, she could not return to her doctor since her yearly allotment of visits under Medicaid was met and Covenant would not authorize further doctor appointments, and her primary care doctor told her that he could not continue to treat her without payment. Ms. Young-blood also specifically testified that when she asked Covenant for workers’ compensation forms in an attempt to get treatment, she was refused. No testimony or evidence was offered by defendants to refute Ms. Youngblood’s testimony. Thus, the defendants effectively denied Ms. Youngblood’s claim for medical expenses when they failed to respond to her request that her claim be reviewed. We find that Covenant’s lack of a response was the equivalent of a denial of compensability such that the exception in LSA-R.S. 23:1142 E applied. See Stewart v. Livingston Parish School Bd., 07-1881 (La.App. 1 Cir. 5/2/08), 991 So.2d 469, 475. When compensability is denied, no approval is required for testing or treatment. Id. The statute does not specify “when” or “how” a denial of compensability must occur; it merely states that if the payor denies that an injury is compensable, the employee need not seek approval for medical treatment. Thus, the exception in subsection E applies regardless of when a denial of compensability occurs. Stewart, 991 So.2d at 475. Considering the above, we can find no manifest error in the OWC’s award of unpaid medical expenses associated with Ms. Youngblood’s work-related injuries.
The defendants also argue that the OWC erred in awarding penalties and attorney fees to Ms. Youngblood, contending that they reasonably controverted Ms. Youngblood’s claim for medical benefits.
112Pursuant to LSA-R.S. 23:1201 F, an employer or insurer may be assessed with penalties and attorney fees for failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by LSA-R.S. 23:1121.[11] Under *242 the applicable statutory provisions of Subsection 1201F, penalties and attorney fees are recoverable unless “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” LSA-R.S. 23:1201 F(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. A determination of whether an employer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review. Atwell v. First General Services, 06-0392 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. Authement v. Shappert Engineering, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188-89.
The OWC awarded a penalty and attorney fee, concluding:
I don’t understand why they did not pay for her medical treatment immediately. And terminating her for cause doesn’t mean that she doesn’t still need medical treatment.... And she continued to have medical problems.
After thoroughly reviewing the record, we find that the OWC’s findings are reasonably supported by the record. Covenant disregarded its duty to properly and reasonably investigate the cause of Ms. Youngblood’s back [^condition, and we, therefore, find no manifest error in the OWC’s award of a penalty and attorney fee. This assignment of error is without merit.
Lastly, the defendants contend that Ms. Youngblood willfully made false statements and misrepresentations for the purpose of obtaining benefits. The OWC, however, found that while Ms. Youngblood was “not the best historian,” any misrepresentations resulted from confusion and were not deliberately made for the purpose of obtaining benefits.
The burden of proof under LSA-R.S. 23:1208 requires more than a mere showing of inconsistent statements or inadvertent admissions by the claimant. Bernard v. Petro Stopping Centers, 07-0387 (La.App. 1 Cir. 11/2/07), 977 So.2d 49, 54, writ denied, 08-0100 (La.3/7/08), 977 So.2d 917; Sevin, 807 So.2d at 1181. The issue of whether an employee forfeited (by willfully making false statements) her workers’ compensation benefits is also one of fact, which should not be reversed on appeal, absent manifest error. Bernard, 977 So.2d at 54.
Upon our own thorough review of the entire record, including Ms. Youngblood’s prior depositions, we cannot say that the OWC was manifestly erroneous in concluding that Ms. Youngblood did not violate LSA-R.S. 23:1208.
CONCLUSION
Based on the above and foregoing reasons, the May 3, 2011 judgment of the OWC is reversed insofar as it awards Ms. Youngblood past and future temporary total disability benefits. In all other aspects, the judgment is affirmed. Costs of this appeal shall be split equally between the plaintiff, Rosalind M. Youngblood, and the *243 defendants, Covenant Security Services, LLC and Ace American Insurance Company.
REVERSED IN PART AND AFFIRMED IN PART.

. Ms. Youngblood initially identified Covenant's insurer as ESIS New Orleans.

. Plaintiffs Disputed Claim for Compensation listed the accident date as April 30, 2006, and she testified at trial that the accident occurred *236 on April 28, 2006. The actual date of the accident is not pertinent to this appeal.

. Ms. Youngblood was terminated for stating on her employment application that she had a high school diploma, although she did not graduate from high school. Her termination is not at issue in this appeal.

. This refers to LSA-R.S. 23:1208, which provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. Louisiana Revised Statutes 23:1221 provides, in pertinent part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
[[Image here]]
(c) For purposes of Subparagraph (l)(a) of this Paragraph, ... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

. Ms. Youngblood’s knee complaints resolved fairly quickly.

. Ms. Youngblood stated that Air Products required Covenant to clear her for work before she could return.

.While Ms. Youngblood testified that she was involved in a motor vehicle accident fifteen years prior to her work-related accident, the evidence suggests that her treatment for injuries was limited to an emergency room visit.

. Ms. Youngblood was also diagnosed with a brain tumor.

. The OWC's finding that Ms. Youngblood was not entitled to indemnity benefits after her termination until the time of her surgery is not before us on appeal.

. Louisiana Revised Statutes 23:1121 provides, in relevant part:
B. (1) The employee shall have the right to select one treating physician in any field *242 or specialty.... After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.