HANS J. LILJEBERG, Judge.
|aIn this worker’s compensation case, defendants, Delta Airlines, Inc. (“Delta”) and Ace American Insurance Company, appeal the October 31, 2011 judgment in favor of claimant, Carl Gabriel, awarding him temporary total disability benefits, medical expenses, and other relief sought. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY

In August of 2008, Mr. Gabriel began working for Delta as a “Ready Reserve” employee. On October 19, 2008, while working in the course and scope of his employment with Delta, Mr. Gabriel was injured when a tow bar that he was disconnecting from an airplane fell onto his left foot.
On October 21, 2008, Delta sent Mr. Gabriel to see Dr. Tamimie, who originally *1288 diagnosed him with a contusion on his left foot and released him to return to work. Shortly thereafter, it was determined that x-rays showed Mr. Gabriel suffered a fracture of the second metatarsal in his left foot. On November 11, 2008, Dr. Tamimie prescribed pain medication for Mr. Gabriel and recommended light duty or “sit down work” only. On this date, he also discharged Mr. Gabriel and recommended that he see an orthopedic doctor.
|sOn November 12, 2008, Mr. Gabriel saw Dr. Nutik, an orthopedist chosen by the employer. After this first visit, Dr. Nutik recommended that Mr. Gabriel return to sedentary duty work while his fracture continued to heal.
On December 3,2008, Mr. Gabriel began treating with Dr. Faust, his own choice of orthopedist. At this first visit, Dr. Faust opined that Mr. Gabriel should have some continued discomfort, but he should not require any further treatment. He also stated that “light duty” work would be appropriate for him. In January 2009, Dr. Faust saw Mr. Gabriel and recommended that he begin physical therapy and work at “light duty.” On February 18, 2009, Dr. Faust released Mr. Gabriel to return to full duty work. However, on February 25, 2009, after Mr. Gabriel contacted Dr. Faust to inform him that he went to a parade and his foot had swelled, Dr. Faust again recommended physical therapy. On April 14, 2009, Dr. Faust opined that Mr. Gabriel’s fracture of the second metatarsal was healed and that he may continue to have some discomfort, but that the fracture was solid. On this date, he also indicated that Mr. Gabriel was capable of gainful employment and he recommended that he return to his former occupation. Again on May 29, 2009, Dr. Faust opined that Mr. Gabriel did not need to restrict his activities and that he could return to gainful employment.
In June 2009, Dr. Faust informed Mr. Gabriel that after 30 days, he would no longer treat him because Mr. Gabriel had indicated that he did not believe Dr. Faust was truthful about the seriousness of his injury. Thereafter, Mr. Gabriel continued to treat with various doctors. He began complaining of back pain as well, which he asserts was caused by an altered gait due to his foot injury.
In September of 2009, Mr. Gabriel began treating with Dr. Johnston. Several tests were performed and Dr. Johnston recommended physical therapy. In his March 24, 2010 report, Dr. Johnston opined that Mr. Gabriel was capable of 14sedentary duty work. In his June 1, 2011 report, Dr. Johnston stated that Mr. Gabriel’s injury was healed.
Dr. Nutik examined Mr. Gabriel again on May 27, 2010 at the employer’s request. In his report of that date, he opined that Mr. Gabriel’s fracture of the second metatarsal had healed in good alignment. He also noted that Mr. Gabriel had subjective complaints, but no objective findings were noted. He indicated that there were no findings in the clinical exam that would indicate reflex sympathetic dystrophy, other than hypersensitivity. Further, Dr. Nutik did not relate Mr. Gabriel’s back pain to his foot injury, noting that “the onset of the low back pain started after Mr. Gabriel’s gait normalized.”
On September 20, 2010, the worker’s compensation judge appointed an orthopedist, Dr. Cazale, as an independent medical examiner (“IME”) to evaluate Mr. Gabriel’s condition and work status. Dr. Ca-zale saw Mr. Gabriel on February 15, 2011. In his report of that date, he stated that no treatment for Mr. Gabriel’s back pain was recommended. He further found that Mr. Gabriel’s foot injury had healed “uneventfully.” He also noted that there were no objective findings to indicate a reflex sym *1289 pathetic dystrophy, but he indicated that he would not be opposed to a triple-phase bone scan, as recommended by Dr. Johnston.
Later, in his deposition of June 14, 2011, Dr. Cazale stated that when he saw Mr. Gabriel in February of 2011, he noted that the fracture of the second metatarsal had healed in the appropriate position and alignment. He opined that a person with this kind of injury would typically return to regular activities within three to four months, and he saw no objective reason why Mr. Gabriel would not follow the same course. He also stated that when he saw Mr. Gabriel in February of 2011, there was a question at that time of whether or not he had reflex sympathetic dystrophy, so he would have had some restrictions. However, based on the results |fiof the bone scan that was subsequently performed, Dr. Cazale opined that Mr. Gabriel was able to perform full-duty work at that time. He indicated that if he had had the results of the bone scan at the time that he examined Mr. Gabriel, he would have recommended that Mr. Gabriel return to full-duty work.
After the accident, Delta paid total indemnity benefits to Mr. Gabriel from January 3, 2009 to April 24, 2009 and from May 19, 2009 to June 1, 2009.[1] On November 6, 2009, Mr. Gabriel filed a Disputed Claim for Compensation, asserting that Delta failed to properly pay indemnity benefits and failed to timely pay or authorize medical benefits. On February 23, 2011, Mr. Gabriel filed a First Amended and Supplemental Disputed Claim for Compensation, adding several new assertions to his claim, including that he had developed a back condition as a result of his foot injury, that he had developed “RSD” in his foot, and that he is entitled to the maximum amount of benefits.
Trial of this matter was held on July 28, August 3, and August 4, 2011. At the commencement of trial, the parties stipulated that Mr. Gabriel was an employee of Delta on the date of the accident, October 19, 2008. They also stipulated that the accident occurred in the course and scope of Mr. Gabriel’s employment. At the conclusion of trial, the worker’s compensation judge allowed the parties additional time to submit post-trial memoranda.
On October 31, 2011, the worker’s compensation judge rendered a judgment finding:
1) that Mr. Gabriel was injured by accident during the course and scope of his employment with Delta on October 19, 2008;
2) that Mr. Gabriel is entitled to temporary total disability benefits from January 3, 2009 through the present and continuing;
|fi3) that Mr. Gabriel is entitled to payment of medical expenses, medication expenses, indemnity benefits, and transportation expenses, in accordance with law;
4) that there is a causal connexity between the accident of October 19, 2008 and Mr. Gabriel’s left foot, back, spine, and psychological injuries;
5) that medical treatment by Dr. Kenneth Taylor is reasonable, necessary, and related to the accident of October 19, 2008, and it shall be paid in accordance with the Louisiana Worker’s Compensation Fee Schedule;
6) that Delta Airlines and Ace American Insurance did not reasonably controvert Mr. Gabriel’s entitlement to indemnity benefits, certain medical treatment, diagnostic tests, and transportation expenses;
*1290 7) that a penalty of $8,000.00 is assessed for all violations;
8) that Mr. Gabriel’s average weekly wage shall be calculated using an hourly rate of $10.50 for a 40-hour work week, and it shall include his bonus and shared rewards from the employer;
9) that Mr. Gabriel is not entitled to temporary total disability benefits for the two-day time period when he was incarcerated;
10) that defendants are entitled to a credit for any payments already made to Mr. Gabriel by them, in accordance with law;
11) that all costs and interest are assessed against defendants.
Delta and Ace American Insurance Company appeal this judgment.

LAW AND DISCUSSION

Defendants base their appeal on several assignments of error. In their first argument on appeal, defendants assert that the worker’s compensation judge erred in refusing to find that Mr. Gabriel violated LSA-R.S. 28:1208 and thus, that he forfeited his worker’s compensation benefits.
The Workers’ Compensation Act imposes penalties, specifically the forfeiture of benefits, for willfully making a false representation in connection with a compensation claim. LSA-R.S. 28:1208. In order to establish that a claimant has forfeited his right to workers’ compensation benefits under LSA-R.S. 23:1208, the ^employer must show: (1) the claimant made a false statement or representation; (2) it was willfully made; and (3) it was made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7, 12; Porter v. Pellerin Construction Company, 06-949, p. 5 (La.App. 5 Cir. 4/11/07), 958 So.2d 7, 10, writs denied, 07-1076, 07-1015 (La.8/31/07), 962 So.2d 438.
Forfeiture of workers’ compensation benefits is a harsh remedy, and because LSA-R.S. 23:1208 is penal in nature, it must be strictly construed. Ocon v. Regency Motors of Metairie, L.L.C., 06-834, p. 5 (La.App. 5 Cir. 4/11/07), 957 So.2d 816, 820, writ denied, 07-1063 (La.9/21/07), 964 So.2d 332. In determining whether a statement was made willfully in an attempt to obtain or defeat benefits, the relationship between the false statement and the pending claim is probative. False statements that are inadvertent or inconsequential will not result in forfeiture. Id.
Although the record contains evidence that Mr. Gabriel made some false statements to his doctors and others, such as his denial of any previous back injury, the record does not establish that such statements were willfully made for the purpose of obtaining worker’s compensation benefits. Therefore, we find no manifest error in the worker’s compensation judge’s failure to find a LSA-R.S. 23:1208 violation.
On appeal, defendants further argue that the worker’s compensation judge erred in awarding temporary total disability benefits to Mr. Gabriel from January 3, 2009 “through the present and continuing.” They assert that temporary total disability benefits should not have been awarded after February 15, 2011, which was the date of the independent medical exam, or alternatively, June 1, 2011, when Dr. Johnston concluded that Mr. Gabriel’s injury was healed.
18Mr. Gabriel responds and asserts that there is “a preponderance of evidence” that proved his disability, and that the testimony of his witnesses established that he remains physically unable to engage in any employment due to the injuries he *1291 suffered in his on-the-job accident. He asks this Court to affirm his award of temporary total disability benefits.
In order to receive benefits for temporary total disability in accordance with LSA-R.S. 23:1221(l)(c), a claimant in a worker’s compensation case must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. Piquet v. Teco Bulk Terminal 08-793, p. 11 (La. 5 Cir. 4/28/09), 13 So.3d 208, 216. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, or much more probable than not. Magee v. Abek, Inc., 04-2554, p. 6 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807, writ denied, 06-1876 (La.10/27/06), 939 So.2d 1287. In the absence of such evidence, the claimant’s demand for temporary total disability benefits fails. Nitcher v. Northshore Regional Medical Center, 11-1761, p. 5 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1007, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342.
The issue of disability is a legal rather than a purely medical determination, with reference to the totality of evidence, including both lay and medical testimony. Nitcher, 11-1761 at 5-6, 92 So.3d at 1007. However, in order to establish by clear and convincing that a claimant is disabled and cannot engage in any employment, the claimant must introduce objective medical evidence of the disabling condition. Delatte v. Pala Group, L.L.C., et al., 09-913, p. 10 (La.App. 1 Cir. 2/10/10), 35 So.3d 291, 299, writ denied, 10-562 (La.5/7/10), 34 So.3d 865. The question is not whether the worker’s compensation claimant could perform the | ¡previous work but, rather, whether the claimant could perform some sort of work. Id. at 10, 35 So.3d at 298.
The factual finding of whether a claimant is entitled to temporary total disability benefits is subject to the manifest error or clearly wrong standard of appellate review. Fleming v. Garda Security, 10-1021, p. 8 (La.App. 5 Cir. 5/10/11), 65 So.3d 763, 768; Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737. In applying the manifest error or clearly wrong standard, the appellate court must determine not whether the factfinder was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Hall v. MacPapers, Inc., 11-1548, p. 4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1131, 1134.
In the instant case, Mr. Gabriel presented the testimony of his grandmother, his two sisters, his girlfriend, who was a medical student, and himself in support of his claim that he has been disabled and cannot work at all since the accident. Both the claimant and defendants presented numerous exhibits, including medical records from various doctors. No doctors were called to testify at trial, and their opinions were derived from their records and/or depositions.
The testimony and exhibits admitted at trial reveal that Mr. Gabriel treated with several doctors after the accident. In November of 2008, both Dr. Tamimie and Dr. Nutik recommended light duty or sedentary work for Mr. Gabriel. On February 18, 2009, Dr. Faust released Mr. Gabriel to full-duty work. After his foot swelled during a parade, on February 25, 2009, Dr. Faust recommended physical therapy. However, on April 14, 2009 and again on May 29, 2009, Dr. Faust opined that Mr. Gabriel could return to gainful employment in his former occupation.
Dr. Johnston began treating Mr. Gabriel in September of 2009 and several tests were performed. As of March 24, 2010, Dr. Johnston opined that Mr. Gabriel *1292 | ipcould perform sedentary work and, in his June 1, 2011 report, he stated that Mr. Gabriel’s injury was healed.
Mr. Gabriel saw the court-appointed IME, Dr. Cazale, on February 15, 2011. He noted that Mr. Gabriel’s injury had healed “uneventfully” and that there were no objective findings that he continued to suffer effects from the foot injury, such as reflex sympathetic dystrophy. In his deposition, Dr. Cazale later stated that based on the bone scan results, he believes that Mr. Gabriel was able to return to work when he saw him on February 15, 2011.
LSA-R.S. 23:1123 provides that the report of the appointed independent medical examiner “shall be prima facie evidence of the facts therein stated ...” Although the law permits a worker’s compensation hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. Campbell v. Gootee Construction Co., 99-913, p. 8 (La.App. 5 Cir. 1/12/00), 756 So.2d 449, 453. However, the medical conclusions of an independent medical examiner should be given significant weight, because the independent medical examiner is an objective party. Clark v. Godfrey Knight Farms, Inc., 08-1723, p. 16 (La.App. 1 Cir. 2/13/09), 6 So.3d 284, 295, writ denied, 09-562 (La.5/29/09), 9 So.3d 163.
The record before us contains evidence suggesting that Mr. Gabriel was able to return to gainful employment as early as February 2009. However, considering the opinions of all of the doctors and the testimony presented, we find that, at the latest, Mr. Gabriel was able to return to gainful employment when he saw the court-appointed IME, Dr. Cazale, on February 15, 2011. As stated above, it is the claimant’s burden to prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. We agree with defendants’ argument on appeal that Mr. Gabriel did not meet his In burden of proving that he was unable to engage in any employment after February 15, 2011.
Considering all of the testimony and evidence in this matter, we find that the worker’s compensation judge’s determination that Mr. Gabriel was entitled to temporary total disability benefits after February 15, 2011 was not a reasonable conclusion, and it was clearly wrong. Accordingly, we reverse the worker’s compensation judge’s award of temporary total disability benefits to Mr. Gabriel after February 15, 2011.
Defendants also argue that the worker’s compensation judge erred in calculating the average weekly wage. They assert that Mr. Gabriel was a part-time employee who was not entitled to any benefits from the company. They contend that it was error for the worker’s compensation judge to apply the 40-hour presumption in LSA-R.S. 23:1021(12)(a)(i) to increase the average weekly wage based on Mr. Gabriel’s disagreement with the earnings documentation, and to increase the average weekly wage based upon “shared rewards” or other benefits.
Mr. Gabriel responds that the worker’s compensation judge correctly applied the 40-hour presumption, because the evidence and testimony show that he consistently worked an eight hour shift five days a week prior to the accident.
LSA-R.S. 23:1021(12) provides in pertinent part:
“Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages
*1293 (i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever | ^reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
A “[p]art-time employee” is defined in LSA-R.S. 28:1201(11) as “an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position.” (Emphasis added.) See also Sowell v. Process Equipment, 06-1198, p. 7 (La.App. 3 Cir. 2/7/07), 948 So.2d 1214, 1219, writ denied, 07-482 (La.4/20/07), 954 So.2d 169.
In the present case, Mr. Gabriel started working for Delta on August 28, 2008. The accident occurred less than two months later on October 19, 2008. Based on the testimony and the exhibits, including the time sheets and the notice pertaining to ready reserve employees, we cannot say that the worker’s compensation judge erred in applying the 40-hour presumption and in calculating the average weekly wage. Accordingly, we find that defendants’ argument on this issue is without merit.
Defendants further contend that the worker’s compensation judge erred in finding that Mr. Gabriel proved a causal connection between the accident and his back or spine injuries.
A worker’s compensation claimant bears the burden of establishing a causal connection between the work accident and the resulting injury by a preponderance of the evidence. Delatte, 09-913 at 4, 35 So.3d at 295. An employee’s work-related accident is presumed to have caused his disability when the claimant proves that before the accident, he had not manifested his disability symptoms; that commencing with the accident, his disability symptoms appeared; and that there is | i;ieither medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition. Id.; Hayes v. Louisiana State Penitentiary, 06-553, p. 9 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 556, writ denied, 07-2258 (La.1/25/08), 973 So.2d 758.
Drs. Nutik, Faust, and Cazale found that Mr. Gabriel’s back complaints were not attributable to the accident or an altered gait. Dr. Nutik specifically noted that Mr. Gabriel’s back complaints arose after his gait had normalized. On the other hand, Dr. Johnston found that the back pain was attributable to an altered gait, and Dr. Taylor found that the back pain was “possibly” secondary to an altered gait.
Considering all of the evidence presented, we cannot say that the worker’s compensation judge erred in finding that there was a causal connection between the accident and his back or spine injuries. Ac *1294 cordingly, we affirm this finding of the worker’s compensation judge.
Defendants further assert that the worker’s compensation judge erred in finding a causal connection between the accident and Mr. Gabriel’s psychological injuries. However, there is no evidence in the record before us to establish that Mr. Gabriel has any psychological condition caused by the work-related accident. Accordingly, we reverse this finding of the worker’s compensation judge.
Defendants also assert that the worker’s compensation judge erred in holding that Mr. Gabriel was entitled to medical treatment with Dr. Kenneth Taylor, who practices in Alabama. However, we agree with defendants that the record does not show that Mr. Gabriel is entitled to further medical treatment with Dr. Taylor. Accordingly, we reverse this finding.
Finally, defendants contend that the worker’s compensation judge erred in not admitting some evidence and in allowing testimony that was not admissible. | uHowever, based on a thorough review of the record and considering our findings in this opinion, it is unnecessary to address these arguments.

DECREE

For the foregoing reasons, we affirm the worker’s compensation judge’s finding that there is a causal connection between the accident and Mr. Gabriel’s back injury. We also affirm the calculation of Mr. Gabriel’s average weekly wage. We reverse the judgment of the worker’s compensation judge awarding temporary total disability benefits after February 15, 2011. We further reverse the findings that Mr. Gabriel’s psychological injuries were causally related to the accident and that Mr. Gabriel is entitled to further medical treatment with Dr. Taylor.

AFFIRMED IN PART; REVERSED IN PART

. Before January 3, 2009, Mr. Gabriel continued working at modified duty for Delta.