MURPHY, J. hln this workers compensation case, the claimant, Carl Gabriel, appearing pro se, appeals the March 28, 2017 judgment in favor of defendants, Delta Airlines, Inc. and Ace American -Insurance Company (collectively “Delta”), which (1) sustained Delta’s exception of prematurity, (2) denied Mr. Gabriel’s rule to show cause seeking to have Delta ordered to pay the costs of medical procedures recommended by his treating physician, and (3) dismissed the matter, with prejudice. For the following reasons, we affirm the judgment of the Workers Compensation Court. FACTS AND PROCEDURAL HISTORY[1] Mr. Gabriel began working for Delta as a “Ready Reserve” employee in August of 2008. Less than two months later, on October 19, 2008, while working in the course and scope of his employment with Delta, Mr. Gabriel was injured when a tow bar that he was disconnecting from an airplane fell onto' his left foot. Mr. Gabriel filed his first Disputed Claim for Compensation, Form 1008, with the Office of Workers’ Compensation (“OWC”) in November 2009 (“2009 disputed claim”), asserting that Delta failed to pay indemnity benefits and failed to timely pay and/or authorize medical benefits. Following trial of the matter, judgment was rendered on October 31, 2011, in favor of Mr. Gabriel and against Delta finding that Mr. Gabriel had proven an injury by accident during the course and scope of his employment with Delta and that he was entitled to benefits. On appeal, this Court affirmed the judgment issued by the workers compensation judge (“WCJ”) ordering Delta to pay temporary total disability payments to Mr. Gabriel from January 3, 2009 through February 15,2011, the date of Mr. Gabriel’s independent medical exam indicating he was able to return to gainful employment.[2] This Cburt also affirmed the WCJ’s finding of a causal connection between Mr. Gabriel’s back complaints and his 2008 work-related foot injury.[3] Mr. Gabriel filed a second Disputed Claim for Compensation, Form 1008, with the OWC on December 30, 2013 in case number 14-49 (“2013 disputed claim”), alleging that Delta had failed to properly pay the amounts owed to him under the October 31, 2011 judgment.[4] Mr. Gabriel sought penalties pursuant to La. R.S. 23:1201(F) and (G) for Delta’s failure to properly pay. Additionally, Mr. Gabriel alleged that a “worsening of his medical condition” caused him to be temporarily totally disabled again as of September 25, 2013.[5] Delta answered Mr. Gabriel’s 2013 disputed claim with a general denial of com-pensability and averred that it had paid to Mr. Gabriel all benefits owed pursuant to the prior judgment. According to Delta, Mr. Gabriel was not entitled to future indemnity benefits. A hearing on Mr. Gabriel’s 2013 disputed claim was held on July 31, 2014, at which time the WCJ addressed solely the issue of whether Delta had properly paid Mr. Gabriel the correct amount of indemnity benefits ordered to be paid | ^pursuant to the prior October 31, 2011 judgment. On November 2, 2016, the WCJ issued a final judgment, which determined that Mr. Gabriel’s average weekly wage was $429.73, with a corresponding compensation rate of $286.50.[6] These amounts were later affirmed by this Court on appeal.[7] The issue regarding whether Mr. Gabriel was entitled to indemnity benefits and medical expenses, based on allegations that new medical evidence determined a “worsening of his medical condition” resulting in his being temporarily totally disabled anew, was not addressed by the WCJ in the November 2,2016 judgment. In regards to his alleged worsening back condition, Mr. Gabriel sought treatment from two physicians in Atlanta, Georgia; namely, Dr. Pallavi Cherukupally, a phy-siatrist, and Dr. James Chappuis, an orthopedic surgeon. Drs. Cherukupally and Chappuis recommended to Mr. Gabriel that he undergo radiofrequency nerve ablation at L4-SI to alleviate his worsening condition. According to Delta, neither Mr. Gabriel nor his treating physicians ever properly requested approval for the recommended treatment through a Form 1010 submitted to Mr. Gabriel’s adjuster. Instead, Mr. Gabriel informally sought approval via faxes sent to his adjuster. Delta contends that, despite his improper submission of the request for approval, the adjuster presented Mr. Gabriel’s request to utilization review, at which time it was determined that the treatment was not medically necessary as it did not fall under the guidelines of Louisiana’s medical treatment schedule. Consequently, Delta denied Mr. Gabriel’s requests for authorization to undergo the recommended radiofrequency nerve ablation treatments. Delta argues that at no time did Mr. Gabriel’s physicians ever appeal to the OWC | .¡Administrative Medical Director seeking review of Delta’s denial of diagnostic testing and/or dispute its determination as to the medical necessity of radiofrequency nerve ablation under the medical treatment guidelines. Mr. Gabriel filed a third Disputed Claim for Compensation, Form 1008, with the OWC on September 29, 2016 (“2016 disputed claim”), alleging that Delta had refused to authorize the radiofrequency nerve oblation treatments recommended by his treating physician(s) and, thus, should be compelled to pay the costs of the treatment (as well as any other procedure ordered by his treating physician(s)) due to Delta’s violations of La. R. S. 23:1142(E) and La. R.S. 23:1203(E). Mr. Gabriel further alleged that he was entitled to penalties, interest, and all other relief afforded by law. Mr. Gabriel also filed a rule to show cause why Delta should be not ordered to pay the cost of the medical procedures recommended by his treating physician(s) due to its violations of La. R. S. 23:1142(E) and La. R.S. 23:1203(E). Specifically, Mr. Gabriel averred that, under La. R. S. 23:1142(E), because of Delta’s general denial of compensability set forth in its January 30, 2014 answer to his prior 2013 disputed claim, medical authorization for the nerve ablation treatment (and, arguably, any other recommended medical procedures) was no longer necessary.[8] Additionally, Mr. Gabriel argued that Delta was in violation of La. R.S. 23:1203(E) because, upon his first request for authorization for medical care to treat his worsening condition, Delta failed to communicate information to him regarding the proper procedure for requesting an independent medical examination (“IME”) in the event a dispute arose as to his medical condition as well as the procedure for appealing a denial of medical treatment to the OWC | ^medical director as provided in La. R.S. 23:1203.1.[9] According to Mr. Gabriel, under La. R.S. 28:1203(E), a payor who has denied medical care, service or treatment without providing documentation evidencing a reasonable and diligent effort to communicate to the claimant notice of his rights is subject to being fined. Consequently, Mr. Gabriel argues that Delta’s failure to provide him notice of his rights and the proper procedure for requesting an IME and an appeal to the medical director, in effect, eliminated Delta from the decision-making process regarding his care and medical treatment. In response to Mr. Gabriel’s 2016 disputed claim, Delta filed an exception of prematurity and an answer with the OWC, on October 11, 2016.[10] Delta asserted that the dispute involving whether or not it was medically necessary for Mr. Gabriel to undergo the recommended radiofrequency nerve ablation was premature on the basis that, pursuant to La. R.S. 23:1203.1, the dispute had not first been submitted to.the OWC Medical Director through the Form 1009 process prior to |BMr. Gabriel’s filing of his 2016 disputed claim.[11] Delta posited that, pursuant to La. R.S. 23:1203,1(J), it-is only after the issuance of a decision from the OWC Medical Director that a party who disagrees with the medical director’s decision may take an appeal by filing a disputed claim. Accordingly, Delta, maintained that because Mr. Gabriel failed to exhaust his administrative remedies, -the filing of his 2016 disputed claim was premature and should, therefore, be dismissed. Delta also filed an opposition to Mr. Gabriel’s rule to show cause denying that it had violated either La. R.S. 23:1142(E) or La. R.S. 23:1203(E). Additionally, Delta argued that the rule to show cause constituted the improper use of summary proceedings and that Mr. Gabriel’s claims should be litigated via an ordinary pro-ceedihg. ‘ Mr. Gabriel’s rule to show cause and Delta’s exception of prematurity came for hearing on November 4, 2016, at which time the WCJ took the matter under advisement. Thereafter, on December 8, 2016, the WCJ issued judgment, with written reasons, denying Mr. Gabriel’s rule to show cause finding that Delta had not violated either La. R.S. 23:1142(E) or La. R.S. 23:1203(E), and sustaining Delta’s exception of prematurity.[12] On March 28, 2017, the OWC issued an amended judgment in favor of Delta and against Mr. Gabriel, sustaining Delta’s exception of prematurity on the ground that Mr. Gabriel had failed to exhaust his administrative remedies pursuant to La. R.S. 23:1203.1 prior to filing his 201617disputed claim concerning Delta’s refusal to authorize the recommended nerve ablation treatment. Accordingly, the WCJ dismissed the matter with prejudice. It is from the March 28, 2017 • amended judgment that Mr. Gabriel timely filed the instant pro se appeal. ISSUE PRESENTED FOR REVIEW The sole issue presented for our review is whether the WCJ erred in overruling Mr. Gabriel’s rule to show cause when she failed to find that Delta had been eliminated from the decision-making process regarding Mr. Gabriel’s request for medical treatment (ie., radiofrequency nerve ablation) due to Delta’s purported violations .of La. R.S. . 28:1142(E) and La. R.S. 23:1203(E),[13] LAW AND ANALYSIS Standard of Review Factual findings in a wdrkers compensation case are subject to the manifest error or clearly wrong standard of appellate review.[14] In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact'finder’s conclusion was a reasonable one.[15] If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently,[16] However, when legal error interdicts the fact-finding process, in a workers’ compensation proceeding, the de novo, rather than the manifest error, | «standard of review applies. Likewise, the interpretation of a statute pertaining to workers’ compensation is a question of law and warrants a de novo review to determine if the.ruling was legally correct,[17] Delta’s Alleged Violation of La. R.S. 23:1142(E) On appeal, Mr. Gabriel contends that the WCJ erred in determining that La. R.S. 23:1142(E) does not apply in this case and that Delta was not eliminated from the decision-making process regarding his medical treatment. The WCJ concluded that, although Delta’s answer to Mr. Gabriel’s 2013 disputed claim contained a general denial, in light of the evidence presented at the hearing establishing that Delta had paid “all reasonable and necessary medical treatment,” Mr. Gabriel failed to prove that Delta had actually denied the compensability of his claim. To the contrary, based on the evidence, the WCJ determined that Delta had, in fact, accepted Mr. Gabriel’s claim as it was continuing to pay for the ongoing reasonable and necessary medical expenses he incurred .throughout 2014, 2015 and 2016 to treat his allegedly worsening condition.[18] Baséd upon our review of the record evidence in its entirety, we agree. Generally, an employee must’ receive prior approval'from his employer before he seeks nonemergency medical attention for a work-related accident or injury costing in excess of $750.00.[19] Once the employer has accepted compensability for a claim, the employee is bound by La. R.S. 23:1142(B), which requires the mutual consent of the employer and employee before a medical provider can provide an injured employee non-emergency medical treatment costing, in excess of $750.00. La. R.S. 23:1142(A)(1) allows a health care provider |flto incur up to $750.00 in non-emergency diagnostic testing and treatment without the mutual consent of the payor for the payment of the claimant’s medical expenses resulting from a work-related injury. An exception to La. R.S. 23:1142(B) is found in La. R.S. 23:1142(E), which states: Exception. In the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury. Thus, Section E of La. R.S, 23:1142 eliminates the need for an injured employee to obtain prior approval from an employer for diagnostic testing or treatment for an injury and removes the $750.00 cap when the employer has denied that the employee’s injury is compensable under the Louisiana Workers Compensation Act. In support of his contention that Delta violated La. R.S. 23:1142(E) and, thus, prior approval for the recommended nerve ablation treatment was not required, Mr. Gabriel relies exclusively on Delta’s answer to his 2013 disputed claim wherein Delta set forth a general denial of com-pensability that Mr. Gabriel’s alleged new/worsening back condition was a result of the prior 2008 work-related injury to his foot. At the November 4, 2016 hearing, Delta did not dispute that it had previously denied the compensability of Mr. Gabriel’s injury as originally set forth in his 2009 disputed claim. Further, Delta conceded that there may have been some disagreement between the parties concerning the calculation of Mr. Gabriel’s average weekly wage and his entitlement to indemnity benefits after February 15, 2011 (which is the date the independent medical examiner determined Mr. Gabriel was no longer temporarily totally disabled). Despite its initial general denial of compensability, Delta introduced evidence showing that since October 31, 2011, when the WCJ issued judgment finding a causal connection between Mr. Gabriel’s back complaints and the prior 2008 injury to his foot, Delta has authorized and |inpaid for Mr. Gabriel’s reasonable and necessary medical treatment related to his back complaints, including reimbursement for mileage and payment of prescriptions, through the date of the 2016 hearing. Our review of the record reveals that not only did Mr. Gabriel fail to introduce any countervailing evidence to dispute Delta’s position, in his testimony he conceded that Delta had continuously paid for the ongoing medical expenses he incurred to treat his worsening condition even after Delta filed its answer to his 2013 disputed claim asserting a general denial of com-pensability for his claim. Accordingly, we find that although initially Delta may have entered a general denial of compensability for Mr. Gabriel’s alleged “new/worsening condition,” by thereafter paying his reasonable and necessary medical expenses through the date of the 2016 hearing, the record clearly establishes that Delta had accepted compensability for Mr. Gabriel’s claim. Therefore, under the facts presented, we find no error in the WCJ’s determination that La. R.S. 23:1142(E) does not apply and that Mr. Gabriel was not relieved from obtaining prior approval for the nerve ablation treatment in accordance with La. R.S. 23:1203.1. We further find that the cases relied upon by Mr. Gabriel to support his contention that Delta violated La. R.S. 23:1142(E) are inapposite to the instant case. In particular, not one of the cases cited stands for the proposition advocated by Mr.-Gabriel herein - i.e., that the exception contained in La. R.S. 23:1142(E) indefinitely exempts an employee from ever having to obtain approval from his employer for testing or medical treatment if, at any time, the employer has denied the injury is compensable, even after the employer has clearly accepted the claim as compensable and continues to authorize and pay for reasonable and necessary medical treatment, as the record indicates Delta has done in this case. Mr. Gabriel cites Stewart v. Livingston Parish Sch. Bd.,[20] for the notion that it does not matter when or how a denial of compensability by the employer occurs; if at any time an employer denies the injury is compensable, the employee need not thereafter seek approval for medical treatment. In Stewart, at issue was whether an employer was entitled to invoke the $750.00 cap provided in La. R.S. 23:1142(B) to the unauthorized non-emer-' gency medical expenses incurred by the employee prior to the employer’s having filed an answer formally denying compens-ability of the employee’s injury.[21] In holding that the exception contained in La. R.S. 23:1142(E) applied, the court found that the employer’s refusal to respond to the employee’s request for a review of his claim was, in effect, equivalent to a denial of compensability.[22] Unlike the. instant case, Stewart ‘did not involve a situation where the employer had subsequently accepted the claim and was paying the employee’s ongoing reasonable and necessary medical expenses. Similar to Stewart, Mr. Gabriel relies on Youngblood v. Covenant Security SVC., LLC,[23] wherein the court found that the employer’s refusal to provide the employee with the workers’ compensation forms she requested in an attempt to get treatment, and its lack of response to the employee’s request for a review of her claim, was tantamount to a denial of compensability invoking ■ the exception of La. R.S. 23:1142(E). Relying on its previous holding in Stewart, the First Circuit stated that La. R.S. 23:1142(E) applies regardless of when an employer denies compensability.[24] Again, the court in Youngblood was not faced with a situation such as that presented in .the case sub judice where the employer accepted the compensability of the employee’s claim following a general denial and, thereafter, [^continued to pay the ongoing reasonable and necessary medical expenses incurred by the employee.. We further find that Mr. Gabriel erroneously relies on Barron v. First Lake Properties, Inc.,[25] to support his position that Delta violated La. R.S. 23:1142(E) in the instant case. In Barron, this Court considered whether an employer was responsible for paying more than the $750.00 cap for non-emergency medical expenses incurred by the employee during a period when the employer had denied compensability for the claim. In ruling that the exception of La. R.S. 23:1142(E) applied during the employer’s period of denial, the hearing officer found that the employer’s insurer had been contacted by the employee’s health care providers seeking approval for various medical tests and treatment and, on each occasion, had denied authorization. According to the hearing officer, the insurer’s refusal to authorize treatment constituted a denial by the employer that the claimant’s injury was a compensable claim. On appeal, this Court held that the hearing officer was correct in its determination that, under the circumstances presented, no prior approval from the employer was required for any diagnostic testing or treatment for that injury.[26] We find Barron is distinguishable from the instant case because it did not involve a situation where the employer subsequently accepted the compensability of the claim and continuously paid the employee’s reasonable and necessary medical expenses. Lastly, Mr. Gabriel cites Jefferson v. Greer Timber Co.,[27] in support of his contention that La. R.S. 23:1142(E) applied to eliminate the requirement that he obtain prior approval from Delta for the nerve ablation treatment related to his new/worsening condition. Like the previous cases upon which Mr. Gabriel relies, Jefferson does not support his position. In Jefferson, at issue was the employer’s | ^entitlement to the benefit of the $750.00 cap for non-emergency medical treatment. The Third Circuit ruled that the $750.00 cap did not apply to an employer who had filed an answer, containing a general denial of com-pensability of the employee’s claim. We find the Jefferson case inapposite to the case sub judice as its focus was the employer’s right to invoke the $750.00 cap when it had previously denied the com-pensability of the employee’s claim, and it did not involve the applicability of La. R.S. 23:1142(Ej when an employer subsequently accepts the compensability of the claim and pays the ongoing reasonable and necessary medical' expenses incurred by the employee. The record establishes - and Mr. Gabriel does not contest - that, after initially denying the- compensability of Mr. Gabriel’s claim alleging a new/worsening condition, Delta continuously paid for his reasonable and necessary medical expenses, including mileage and prescriptions, through the date of the hearing in November 2016. Based on Mr. Gabriel’s failure to present any,evidence to the contrary or cite to any persuasive authority (and our research has not revealed any) that supports his contention that, under the circumstances presented, he was exempt from obtaining prior approval from Delta for diagnostic testing and/or medical treatment, including the nerye ablation treatment, we find the WCJ properly determined that La. R.S. 23:1142(E) does not apply in this case. Consequently, because La. R.S. 23:1142(E)'does not apply, Mr. Gabriel was required to seek prior approval from Delta in accordance with La. R.S. 23:1203.1 for any nonemergency medical treatment in excess of $750.00. Delta’s Alleged Violation. of La. B.S. 23:1203(E) We now turn to Mr. Gabriel’s contention that the WCJ erred in refusing to find that Delta violated La. R.S. 23:1203(E). Specifically, Mr. Gabriel contends that, under the statute, Delta has been eliminated from the decision-making process regarding his medical treatment based on its failure to provide him with the | requisite notice regarding his right to obtain an IME and to appeal the denial of medical treatment in the event of a dispute. At the time of his 2008 accident, La. R.S. 23:1203(E) provided: Upon first payment for a claimant’s medical care, service, or treatment, the payor, as defined in R.S, 23:1142(A)(1), shall communicate to the claimant information, in plain language, regarding the procedure for requesting an independent medical examination in the event a dispute arises as to the condition of the employee. A payor shall not deny medical care, service, or treatment to the claimant unless the payor can document a reasonable and diligent effort in communicating such information. A payor who denies medical care, services, or treatment without making such an effort may be fined an amount not to exceed five hundred dollars or the cost of the medical care, service, or treatment, whichever is more.. Pursuant to Acts 2012, No. 235, § 1, effective August -1, 2012, - • La. R.S. 23:1203(E) was amended and “first payment” was substituted with “first request for authorization pursuant to La. R.S.-23:1142(B)(1).” In addition to providing the claimant with information regarding his right to request, an IME, the 2012 amendment added the requirement that the pay- or provide the claimant with notice of his right to, and the procedure for, appealing the denial of medical treatment to the OWC Medical Director as provided in La. R.S. 23:1203.1, Mr. Gabriel argues that. La. R.S. 23:1203(E), as amended, applies to his 2013 disputed claim and that, as such, when he first requested authorization for medical care to treat his allegedly worsening condition ip September 2013, Delta was required to communicate information to him at that time regarding his rights, insofar as requesting an IME and the procedure for appealing the denial of medical treatment to the OWC Medical Director. Moreover, according to Mr. Gabriel, Delta’s obligation to communicate this information to him was triggered anew each time he sought medical treatment from a different health care provider. Consequently, because Delta failed to properly notify him of his right to appeal a | ir,denial to the OWC Medical Director when he first requested authorization for treatment with the Atlanta doctors for his worsening condition in 2013, Mr. Gabriel avers Delta was in violation of La. R.S. 23:1203(E), as amended, and was, thereafter, prevented from denying payment for the nerve ablation treatment (or payment for'any other medical expenses he incurred to treat his worsening condition). To the contrary, Delta contends'that the pre-amended version of La. R.S. 23:1203(E) applies, and that it has fully complied with the requirements of' that statute. At the hearing on Mr. Gabriel’s rule to show cause,‘Delta submitted evidence in- the form of a January 2, 2009 letter from its insurer to Mr. Gabriel, which contained the following: We wanted to let you know that in the event of a dispute regarding your medical condition,' you would have the right to request that the Director of the Office of Worker’s Compensation appoint a Physician to conduct an Independent Medical Examination. The letter also provided Mr. Gabriel with the procedure for requesting an IME in the event he felt he needed one. Delta submitted evidence that Mr. Gabriel did, in fact, assert his right to an IME in September of 2010, clearly indicating that he was fully aware that there was a procedure in place that he had to follow in the event of a dispute with Delta regarding his médical treatment. Delta further avers that, even applying the amended version of La. R.S. 23:1203(E), the statute requires the payor to communicate information to the claimant “upon the first request for authorization of medical care, service, or treatment,” and, in this case, Mr. Gabriel’s first request for authorization for medical treatment occurred in 2008, to which Delta responded by sending him the January 2, 2009 letter advising him of his rights. And, while additional requests for authorization for treatment occurred after La. R.S. 23:1203(E) was amended, Delta argues that those requests were ' not the first. 11flIn finding that Delta had not violated La. R.S. 23:1203(E), and was not removed from -the decision-making process regarding Mr. Gabriel’s medical treatment, the WCJ determined that Delta’s 2009 letter to Mr. Gabriel fulfilled its obligation under the statute to advise Mr. Gabriel of his rights and, in the event he felt the need to exercise those rights, the steps he needed to take. Based on our review of the record, under the particular facts and circumstances of this case, we find no error in the WCJ’s determination that Delta had fulfilled its obligations to Mr. Gabriel under La. R.S. 23:1203(E) and that no violation had occurred. For the foregoing reasons, we affirm the workers’ compensation judge’s findings and judgment denying Mr. Gabriel’s rule ’to show cause on the basis that the exception of La. R.S. 23:1142(E) did not apply and that Delta did not violate La. R.S. 23:1203(E). AFFIRMED. . The factual and procedural history of this workers compensation claim has spanned over the course of .many years and has involved extensive litigation between the parties concerning various issues. See Gabriel v. Delta Airlines, 12-428 (La. App. 5 Cir. 01/30/13), 106 So.3d 1285, writ denied, 13-0917 (La. 05/31/13), 118 So.3d 399; Gabriel v. Delta Air Lines, Inc., 16-210 (La. App. 5 Cir. 10/19/16), 202 So.3d 1184; Gabriel v. Delta Air Lines, Inc., 16-680 (La. App. 5 Cir. 05/17/17), 222 So.3d 928. Our recitation here Is limited to the pertinent details relative to the issues presented for our review on this appeal, . See Gabriel v. Delta Airlines, 12-428, p. 10, 106 So.3d at 1292. . This Court reversed the trial court's finding of a causal connection between the work-related accident and Mr. Gabriel’s, alleged psychological injuries. See Gabriel v. Delta Airlines, 12-428, p. 13, 106 So.3d at 1293-1294. The Supreme Court denied writs. See Gabriel v. Delta Airlines, 13-917 (La. 05/31/13), 118 So.3d 399. . Gabriel v. Delta Air Lines, Inc., 16-680, p. 2 (La. App. 5 Cir. 05/17/17), 222 So.3d 928, 930. . Mr. Gabriel’s 2013 disputed claim sets forth the following "bona-fide dispute,” in pertinent part: Other: Refusing to pay all TTD benefits between] 1-3-2009 & 2-15-2011 (less 2 days) at [$]546 p/week (see Attachment 3) & not restarting TTD benefits as 9-25-13 to present; not paying medical bills and mileage (see Attachment 4) - see Judgment, OWCP 07, #09-0950, dated 10-31-11, as amended in 5th Cir (No. 12-CA-428), 30 days after these were final and, then, within thirty days of demand for payment under R.S. 23:1201 (F) & (G) penalties (see Attachment 5). There is no mention of Delta’s purported denial of authorization for radiofrequency nerve ablation treatment. The only reference to medical treatment is that Delta had "not [paid] medical bills and mileage” for Mr. Gabriel. . The WCJ originally issued judgment on October 28, 2015 ruling that Mr. Gabriel’s average weekly wage was $429.75. Mr. Gabriel, pro se, appealed that judgment, which we dismissed and remanded to the OWC on the basis that the October 28, 2015 judgment was not a valid appealable judgment. See Gabriel v. Delta Air Lines, 16-210 (La. App. 5 Cir. 10/19/16), 202 So.3d 1184. On remand, the WCJ issued a final judgment dated November 2, 2015. . See Gabriel, 16-680 at p. 17, 222 So.3d at 935. . La. R.S. 23:1142(E) provides that "[i]n the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.” . La. R.S. 23:1203(E) states that "[ujpon the first request for authorization pursuant to R.S. 23:1142(B)(1), for a claimant’s medical care, service, or treatment, the payor, as defined in R.S. 23:1142(A)(1), shall communicate to the claimant information, in plain language, regarding the procedure for requesting an additional medical opinion regarding a medical examination in the event a dispute arises as to the condition of the employee or the employee’s capacity to work, and the procedure for appealing the denial of medical treatment to the medical director as provided in R.S. 23:1203.1. A payor shall not deny medical care, service, or treatment to a claimant unless the payor can document a reasonable and diligent effort in communicating such information. A payor who denies medical care, service, or treatment without making such an effort may be fined an amount not to exceed five hundred dollars or the cost of the medical care, service, 'or treatment, whichever is more,” At the time of Mr. Gabriel’s Injury in 2008, and when Delta made the first payment for his medical care as a result thereof, La. R.S, 23:1203(E) imposed upon the employer only the obligation to communicate to the employee information regarding the procedure: for requesting an IME in the event of a dispute; it did not require the employer to communicate information regarding the procedure for appealing the denial of medical treatment. . Attached.-to its exception" of prescription, Delta included-a copy of the initial review from the Network Medical Review Company Limited (“NMR”) dated June 10, 2106, wherein the NMR set forth its determination that Mr. Gabriel’s request to undergo "radiof-requency ablation bilateral L4-S1” was not medically necessary stating the following; “[Louisiana] guidelines [do] not address the requested Radiofrequency Ablation ... the documentation presented does not support that going forward with the radiofrequency ablation is medically necessary. Therefore, non-certification is recommended.” . La. R.S, 23:1203.1 requires that all requested medical treatment fall under the Louisiana Medical Treatment Guidelines and that disputes over the" recommended treatment ■ must be resolved by the medical director before the treatment can be provided. As previ- - ously noted, Delta averred that neither Mr. • Gabriel nor his treating physician ever properly submitted a Form 1010 requesting "approval for the recommended treatment, Mr. Gabriel did not dispute this fact; ■ instead, he took the position that Delta’s general denial of the compensability of his claim in its answer to his 2013 disputed claim abrogated the necessity of him having to even submit a Form 1010 requesting" approval. . Mr. Gabriel filed a petition for devolutive appeal of the OWC’s December 8, 2016 judgment. On March 28, 2017, this Court determined that because the OWC judgment lacked the requisite decretal language, it was not a valid, final judgment upon, which we could reach the merits of an appeal. On that same day, the OWC issued an aménded judgment including the appropriate decretal language making it a final, appealable judgment. . On May 4, 2017, Delta filed a motion to . dismiss Mr. Gabriel's appeal as moot on the basis that the underlying dispute as to authorization for the recommended radiofrequency nerve ablation treatment had been resolved. Specifically, Delta averred that since Mr. Gabriel's filing of the instant petition for appeal, Delta had authorized and agreed to pay for the requested medical treatment for his lumbar and lower back pain. Mr. Gabriel opposed-Delta's motion to dismiss, and on May 17, 2017, this Court issued an order denying Deb ta's motion. . Lafayette Bone & Joint Clinic (Morris) v. La. United Business SIF, 15-2137, p. 27 (La. 6/29/16), 194 So.3d 1112, 1123. . Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La. 1993); Hookfin v. Advantage Nursing Services, Inc., 03-340, p. 3 (La. App. 5 Cir. 10/15/03), 860 So.2d 57, 59. . Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 9 (La. 3/4/98), 708 So.2d 375, 381. . Dorion v. Gulf States Asphalt Co., L.P., 08-670, pp. 7-8 (La. App. 5 Cir. 4/28/09), 14 So.3d 44, 48. . Delta presented a Medial Payment Printout reflecting medical expenses it had paid on behalf of Mr. Gabriel, which indicated that Delta had paid for ongoing medical treatment rendered to Mr. Gabriel from August 2014 through March of 2016. . La. R.S. 23:1142(B). . 07-1881 (La. App. 1 Cir. 5/2/08), 991 So.2d 469. . Stewart, 07-1881 at p. 8, 991 So.2d at 474. . Id., 07-1881 at p. 9, 991 So.2d at 475. . 11-2382 (La. App. 1 Cir. 12/21/12), 112 So.3d 233. . Youngblood, 11-2382 at p. 19, 112 So.3d at 241. . 93-902 (La. App. 5 Cir. 1994), 636 So.2d 970. . Barron, 93-902 at pp. 7-10, 636 So.2d at 972-973. . 618 So.2d 21 (La. App. 3rd Cir. 1993).